**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARCELLUS BALL,

              Plaintiff,

vs.

CITY OF DETROIT, a municipal
corporation, IAN SEVERY, an individual,
DONNA McCORD, an individual, and
JASON ADAMS, an individual,

              Defendants.

Case No. 21-11653
Hon. David M. Lawson
Magistrate Judge: Kimberly G. Altman

---

JOEL B. SKLAR (P38338)
LAW OFFICES OF JOEL B. SKLAR
Attorney for Plaintiff
500 Griswold, Suite 2450
Detroit, MI 48226
Phone:(313) 963-4529
Fax: (313) 313-963-9310
joel@joelbsklarlaw.com

TODD RUSSELL PERKINS (P55623)
STEPHEN J. CHACKO (P78210)
PERKINS LAW GROUP, PLLC
Attorneys for Plaintiff
 615 Griswold, Suite 400
Detroit, MI 48226
Phone:(313) 964-1702

ANDRAE D. SMITH (P69153)
LETITIA C. JONES (P52136)
CITY OF DETROIT LAW DEPT.
Attorneys for Defendant City of Detroit
2 Woodward Avenue, Suite 500
Detroit, MI 48226
Phone:(313) 237-3088 / (313) 237-3002
Fax: (313) 224-5505
smithand@detroitmi.gov
jonelc@detroitmi.gov

---

**<u>CORRECTED</u>**
**<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO Fed. R. Civ. P.</u>**
**<u>§56</u>**
**<u>Oral Argument Requested</u>**

1

Defendants, CITY OF DETROIT, IAN SEVERY, DONNA MCCORD, and JASON ADAMS ("Defendants"), by and through the undersigned attorneys, moves for summary judgment of Plaintiff's Claims pursuant to Fed. R. Civ. P §56.

1. In accordance with E.D. Mich. LR 7.1(a), the undersigned counsel certifies that counsel spoke with opposing counsel on June 14, 2022, explaining the nature of the relief sought by way of this motion and seeking concurrence in the relief; concurrence was denied.

2. On July 16, 2021, Plaintiff Marcellus Ball, who at that time was a Sergeant with the Detroit Police Department, filed a  three (3) count Complaint in the instant matter.

3. Count 1 of Plaintiff's Complaint alleges that Defendants Severy, McCord, and Adams retaliated against Plaintiff in violation of the First Amendment. Plaintiff alleges Defendants retaliated against him because he spoke out, as a private citizen, about the implementation and execution of a verbal order issued by Defendant Adams, to arrest citizens without probable cause for violation of MCL 750.227(c), "Carrying Concealed Weapon- motor vehicle."

4. Count 2 of Plaintiff's Complaint alleges a Monell Claim based on the accusation that Defendant City of Detroit has an illegal policy or custom of retaliating against employees who exercise their rights as private citizens to speak out on matters of public concern.

2

5.    Count 2 further alleges a Monell Claim based on the accusation that Defendant City of Detroit failed to supervise or train its employees to refrain from retaliating against employees who exercise their rights as private citizens to speak out on matters of public concern.

6.    Count 3 of Plaintiff's Complaint alleges that Defendants violated Michigan's Whistleblower Protection Act ("WPA"), M.C.L. §15.361, et seq.

7.    On August 30, 2021, Defendant City of Detroit filed its Answer to Plaintiff's Complaint.

8.    On September 15, 2021, Defendants' Ian Severy, Donna McCord, and Jason Adams filed their Answers to Plaintiff's Complaint.

9.    Discovery has concluded and Defendants file the instant motion.

10.    Plaintiff's First Amendment Retaliation claim must be dismissed because Defendants' Ian Severy, Donna McCord, and Jason Adams are entitled to qualified immunity.

11.    Plaintiff's First Amendment Retaliation claim must be dismissed because Plaintiff cannot establish a prima facie case.

12.    To establish a prima facie case of First Amendment Retaliation, A plaintiff must demonstrate (1) that he engaged in constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

13.    Because Plaintiff was a public employee at the time he engaged in the speech at issue, to establish the threshold requirement that his speech was protected, he must also demonstrate that (1) he spoke on a matter of public concern; (2) he spoke as a private citizen rather than as an employee pursuant to his official duties; and (3) his speech interest outweighs the government's interest, as an employer, in promoting efficient public service through its employees.

14.    Plaintiff's Monell Claim must be dismissed because Plaintiff cannot establish that Defendant City of Detroit had a formal, or de facto, policy or custom of retaliating against its employees who speak as private citizens on matters of public concern.

15.    Plaintiff cannot establish a Monell Claim based on actions by an authorized policymaker. Defendants Severy, McCord, and Adams do not possess "policymaking authority" because they do not have final authority to establish policy on behalf of the City of Detroit.

16.    Plaintiff cannot establish a Monell Claim based on the existence of a custom of tolerance or acquiescence to retaliation against employees. Plaintiff cannot demonstrate (1) the existence of a clear and persistent pattern of retaliation by City of Detroit employees; (2) notice or constructive notice on the part of the City of Detroit; (3) The City of Detroit's tacit approval of the unconstitutional conduct, such that their deliberate indifference in failing to act can be said to amount to an official policy of

inaction; and (4) that the City of Detroit's custom was the 'moving force,' or direct causal link for the constitutional deprivation.

17.  Plaintiff cannot establish a Monell Claim based on the City of Detroit's alleged failure to supervise or train its employees. Plaintiff cannot show: (1) that the City acted with "deliberate indifference;" and (2) Plaintiff cannot show that his injuries were "actually caused" by the City's alleged improper training or supervision.

18.  Plaintiff's WPA claim must be dismissed because Plaintiff cannot establish a prima facie case.

19.  To establish a prima facie case under Michigan's WPA, a plaintiff must show that (1) he engaged in protected activity as defined by the act, (2) the plaintiff suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action.

20.  For the purposes of this Motion, Defendants do not contest that Plaintiff was engaged in protected activity under the WPA.

21.  Defendants have offered a legitimate business reason for the alleged adverse employment actions.

22.  Plaintiff cannot establish that Defendants proffered legitimate business reason is pretext.

23.  There is no genuine issue of material fact regarding any of the above claims, and as such, Defendants are entitled to judgment as a matter of law.

WHEREFORE, Defendants request this Honorable Court enter an order dismissing Plaintiffs' claims against them with prejudice.

Respectfully submitted,

CITY OF DETROIT LAW DEPARTMENT

/s/*Andrae D. Smith*
Andrae D. Smith (P69153)
Attorney for Defendant
2 Woodward Avenue, Suite 500
Detroit, MI 48226
(313) 237-3088
Smithand@detroitmi.gov


/s/*Letitia C. Jones*
Letitia C. Jones (P52136)
Attorney for Defendant
2 Woodward Avenue, Suite 500
Detroit, MI 48226
(313) 237-3002
Jonelc@detroitmi.gov

Dated: July 19, 2022

6

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARCELLUS BALL,

        Plaintiff,

vs.

CITY OF DETROIT, a municipal
corporation, IAN SEVERY, an individual,
DONNA McCORD, an individual, and
JASON ADAMS, an individual,

        Defendants.

Case No. 21-11653
Hon. David M. Lawson
Magistrate Judge: Kimberly G. Altman

---

JOEL B. SKLAR (P38338)
LAW OFFICES OF JOEL B. SKLAR
Attorney for Plaintiff
500 Griswold, Suite 2450
Detroit, MI 48226
Phone:(313) 963-4529
Fax: (313) 313-963-9310
joel@joelbsklarlaw.com

TODD RUSSELL PERKINS (P55623)
STEPHEN J. CHACKO (P78210)
PERKINS LAW GROUP, PLLC
Attorneys for Plaintiff
615 Griswold, Suite 400
Detroit, MI 48226
Phone:(313) 964-1702

ANDRAE D. SMITH (P69153)
LETITIA C. JONES (P52136)
CITY OF DETROIT LAW DEPT.
Attorneys for Defendant City of Detroit
2 Woodward Avenue, Suite 500
Detroit, MI 48226
Phone:(313) 237-3088 / (313) 237-3002
Fax: (313) 224-5505
smithand@detroitmi.gov
jonelc@detroitmi.gov

---

**CORRECTED**
**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

QUESTIONS PRESENTED ................................................................................. v

STATEMENT OF FACTS ................................................................................. 1

STANDARD OF REVIEW ................................................................................. 6

ARGUMENT ....................................................................................................... 7

    I.   FIRST AMENDMENT RETALIATION ................................................. 7

        A.  Prima Facie Case ............................................................................. 8

            1.  Constitutionally Protected Speech ................................................. 8

            2.  Causation ........................................................................................ 10

        B.  Legitimate Business Reason ........................................................... 11

    II.  MONELL CLAIM ................................................................................. 11

        A.  Actions of Policymaking Officials ................................................. 12

        B. Custom of Tolerance or Acquiescence ............................................ 13

        C.  Failure to Train or Supervise ......................................................... 14

        D.  Causation ....................................................................................... 16

    III.  MICHIGAN WHISTLEBLOWER PROTECTION ACT ...................... 17

        A.  Plaintiff's Prima Facie Case ........................................................... 17

            1.  Adverse Employment Action ........................................................ 17

            2.  Causation ....................................................................................... 20

        B. Legitimate Business Reason ............................................................ 22

    IV. QUALIFIED IMMUNITY ................................................................... 24

CONCLUSION.................................................................................................... 24

## <u>INDEX OF AUTHORITIES</u>

<u>**Cases**</u>

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................. 10

*Bickerstaff v. Lucarelli*,
    830 F.3d 388 (6th Cir. 2016). (Dismissing ...................................... 13

*Boulton v. Swanson*,
    795 F.3d 526 (6th Cir. 2015) ............................................................ 7

*Burgess v. Fischer*,
    735 F.3d 462 (6th Cir. 2013) .......................................................... 15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...................................................................... 6, 10

*City of Canton v. Harris*,
    489 U.S. 378 (1989) ........................................................................ 15

*Connick v. Thompson*,
    563 U.S. 51 (2011) .......................................................................... 14

*Debano-Griffin v. Lake Cnty.*,
    493 Mich. 167, 828 N.W.2d 634. (2013) .................................... passim

*Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*,
    103 F.3d 495 (6th Cir. 1996) .......................................................... 13

*Feliciano v. City of Cleveland*,
    988 F.2d 649 (6th Cir. 1993) ..................................................... 12, 16

*Gambrel v. Knox Cnty., Kentucky*,
    25 F.4th 391 (6th Cir. 2022) ............................................... 11, 14, 15

*Garcetti v. Ceballos*,
    547 U.S. 410, (2006) ........................................................................ 8

*Haddad v. Gregg*,
    910 F.3d 237 (6th Cir. 2018) ........................................................... 8

*Hager v. Pike Cty. Bd. of Educ.*,
   286 F.3d 366 (6th Cir. 2002) .......................................................................... 7

*Lane v. Franks*,
   573 U.S. 228 (2014) ..................................................................................... 8

*Leary v. Daeschner*,
   349 F.3d 888 (6th Cir.2003) .......................................................................... 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ................................................................................. 6, 7

*Mayhew v. Town of Smyrna*,
   856 F.3d 456 (6th Cir. 2017) ......................................................................... 8

*Metris-Shamoon v. City of Detroit*,
   545 F. Supp. 3d 506 (E.D. Mich. 2021) ......................................................... 14

*Oklahoma City v. Tuttle*,
   471 U.S. 808 (1985) ................................................................................... 16

*Omokehinde v. Detroit Bd. of Educ.*,
   563 F. Supp. 2d 717 (E.D. Mich. 2008) ........................................................... 9

*Pace v. Edel-Harrelson*,
   499 Mich. 1, 878 N.W.2d 784 (2016) ............................................................ 17

*Pearson v. Callahan*,
   555 U.S. 223, (2009) .................................................................................. 24

*Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*,
   391 U.S. 563 ............................................................................................... 8

*Plinton v. Cnty. of Summit*,
   540 F.3d 459 (6th Cir. 2008) ....................................................................... 15

*Powers v. Hamilton Cnty. Pub. Def. Comm'n*,
   501 F.3d 592 (6th Cir. 2007) ....................................................................... 16

*Shaw v. Ecorse*,
   283 Mich. App. 1, 770 N.W.2d 31 (2009) ....................................................... 20

*Smith v. City of Flint,*
    313 Mich. App. 141, 883 N.W.2d 543 (2015) ................................................................ 19

*Toward v. City of Warren,*
    No. 319858, 2015 WL 3874676 (Mich. Ct. App. June 23, 2015) ..................................... 19

*Vereecke v. Huron Valley Sch. Dist.,*
    609 F.3d 392 (6th Cir. 2010) ......................................................................................... 10

*Weisbarth v. Geauga Park Dist.,*
    499 F.3d 538 (6th Cir. 2007) ........................................................................................... 9

*West v. Gen. Motors Corp.,*
    469 Mich. 177, 665 N.W.2d 468 (2003)..................................................................... 20, 22

*Winkler v. Madison Cnty.,*
    893 F.3d 877 (6th Cir. 2018) ......................................................................................... 12

*Wurtz v. Beecher Metro. Dist.,*
    (2012) 825 N.W.2d 651, 298 Mich.App. 75 ................................................................... 18

## **Statutes**

42 U.S.C. § 1983 ................................................................................................. v, 1, 7, 11

M.C.L. §15.361 ....................................................................................................... 3, 1, 17

MCL §15.362 ............................................................................................................. 17, 18

MCL 750.227(c) ............................................................................................................... 2

## **Rules**

Fed. R. Civ. P. 56(c) ......................................................................................................... 6

## **Other Authorities**

LR 7 ................................................................................................................................. 2

## QUESTIONS PRESENTED

1. Whether Plaintiff can establish a prima facie case of First Amendment Retaliation?

2. Whether Plaintiff can establish a prima facie case of municipal liability 42 U.S.C. § 1983?

3. Whether Plaintiff can establish a prima facie case of a violation under the Michigan Whistleblower Protection Act?

4. Whether Plaintiff can establish that Defendants' stated reasons for its actions was pretext?

## STATEMENT OF FACTS

### A. Procedural Background

On July 16, 2021, Plaintiff Marcellus Ball (herein "Plaintiff") filed the instant Complaint alleging: (1) First Amendment retaliation, under 42 U.S.C. § 1983, against Defendants Ian Severy (herein "Cpt. Severy"), Donna McCord (herein "Lt. McCord"), and Jason Adams (herein "Lt. Adams"); (2) Municipal liability, under 42 U.S.C. § 1983, against Defendant City of Detroit (herein "City"); and (3.) Violation of the Michigan Whistleblower Protection Act ("WPA"), *M.C.L. §15.361, et seq* by all Defendants. (**Exhibit 1,** Complaint, at ECF No. 1, PageID.1-13)

### B. Factual Background

Plaintiff began employment with the City of Detroit as a Police Officer on July 28, 1986. (**Exhibit 18** at pg. 3, Internal Affairs Report) He was promoted to the rank of Sergeant in 1996. (**Exhibit 2** at 19:1-7, Plaintiff's Deposition**)** In July 2018, Plaintiff was transferred to Investigative Operations and assigned to the Tenth Precinct's Detective Unit (herein "10th Pct. PDU") where he was the senior ranking Sergeant. (**Ex. 2**, at 29:23-31:9).

Plaintiff's job duties as a Sergeant were defined by his role at the 10th Pct. PDU, and by the Detroit Police Department Manual. (**Exhibit 14**, at 000403COD, DPD Manual: Department Rank Structure, see 101.2-14 Sergeant) (**Exhibit 15**, DPD Manual: Supervision) As ranking Sergeant at the 10th Pct. PDU, his responsibilities included case intake and

1

assignment. (**Ex. 2**, at 62:6-70:18) Plaintiff's case intake duties required him to conduct a "probable cause review" of all arrests. (**Ex. 2**, at 62:6-70:18)

While conducting "probable cause reviews" of incoming PDU cases, Plaintiff alleges he noticed an unusually high increase in CCW-MV arrests by the 10th Precinct's Special Operations Unit (Herein "SOU") that, in his opinion, lacked probable cause. (**Ex. 1,** at ECF No. 1, PageID3**;** ¶14) (**Ex. 2**, at 119:19-120:4). Specifically, CCW-MV cases involving the presence of an illegal firearm in a vehicle with multiple occupants. (**Ex. 1,** at ECF No. 1, PageID3**;** ¶14)

Plaintiff alleges he initially took his concern about the at issue arrests to SOU supervisor, Lt. Adams, as well as SOU Sergeants and Officers, in May 2021. (**Ex. 1,** at ECF No. 1, PageID4**;** ¶16) (**Ex. 2**, at 111:12-115:23; 122:16-126:11). While speaking with members of SOU about his concerns, he alleges he was told that SOU's supervisor, Lt. Adams, instructed the SOU team to arrest everyone in the vehicle when an illegal firearm is found, no matter what. (**Ex. 1,** at ECF No. 1, PageID4**;** ¶¶17-18) (**Ex. 1**, at 111:12-115:23; 122:16-126:11; 155:15-19).

Plaintiff alleges he spoke to Lt. Adams about his concerns and Adams called him a "CRTP Sergeant," meaning a Sergeant who encourages crime victims to sign a "Complainant Refuses To Prosecute" form. (**Ex. 2**, at 115:10-23).

Plaintiff alleges he also took his concerns about the at-issue arrests to his direct supervisor, Lt. McCord and her supervisor, Capt. Ian Severy, to no avail. (**Ex. 2**, at 112:8-

2

113:3; 116:19-22) Plaintiff claims that McCord sought to have him re-assigned in retaliation. Plaintiff then took his concerns to Commander Jacqueline Pritchett (herein "Cmdr. Pritchett), Deputy Chief Marlon Wilson ( "DC Wilson), and Wayne County Prosecutors Lori Mireles-Smith and Kim Miles. (**Ex. 2**, at 80:1-87:20; 118:6-119:11; 130:15-132:20).

" (**Ex. 2**, at 152:20-153:20)

**Plaintiff is Suspected of Violating the Department's Policy on "Gossiping."**

On May 26, 2021, Lt. McCord held a private closed-door meeting with Detective Jason Kuhar ("Det. Kuhar"), a senior robbery investigator at the Tenth Precinct PDU. During the meeting, Det. Kuhar objected to Officer Makala Moore's ("Ofc. Moore) placement on the PDU's robbery investigation team due to his concerns about her work ethic (**Exhibit 3**, at 16:5-15, Donna McCord Deposition), (**Exhibit 7**, at 9:1-11:13, Donna McCord "Garrity Interview")   That same day, Lt. McCord received a call from Ofc. Moore, who was upset, because she had been told that  Det. Kuhar's made derogatory comments about her in the meeting. (**Ex. 3**, at 16:5-19) (**Ex. 7**, at 10:11-11:19)  y." (**Ex. 7**, at 11:18-19)

Lt. McCord asked Ofc. Moore to identify the person who told her about Det. Kuhar's comments; and specifically asked whether it was Plaintiff. (**Ex. 3**, at 16:13-22) (**Ex. 7**, at 11:16-12:3) Moore did not respond, or affirmatively deny Plaintiff's involvement. (**Ex. 3**, at 16:13-17:3) (**Ex. 7**, at 11:16-12:3) Lt. McCord believed that Plaintiff was the culprit based on his and Ofc. Moore's close relationship. (**Ex. 3**, at 17:19-18:19) (**Ex. 7**, at 11:16-12:3)  (**Ex.   18**,   at 000466COD: ¶1)

**A Request is Made to Temporarily Reassign Plaintiff Pending Investigation.**

Lt. McCord requested Capt. Severy initiate a formal investigation to determine if Plaintiff had violated the Department's policy against "gossiping". (**Ex. 3**, at 18:16 – 19:19; 73:5-7); (**Ex. 7**, at 12:4-13); (**Ex. 4**, at 9:21 – 19:19; 73:5-7), (**Exhibit 8**, at 12:4-13, Severy IA Witness Interview,) (**Exhibit 16**, at 000348- COD, see "102.3-6.15 Miscellaneous, subsection (2)-Gossiping," Detroit Police Department Manuel). Additionally, Lt. McCord requested that Plaintiff be temporarily assigned out of the PDU while the investigation was conducted. (**Ex. 3**, at 14:4 –15:18), (**Ex. 7**, at 12:4-10).

During the **morning of May 27, 2021**, Capt. Severy and Lt. McCord spoke to Cmdr. Stewart about initiating an investigation of Plaintiff for "gossiping" based on Sgt. McCord's accusations; and assigning him out pending the investigation. (**Ex. 3**, at 15:16-17:01;101:25-102:22); (**Ex. 7**, at 12:14-25); (**Ex. 4**, at 9:14–12:22; 17:3-13; 92:4-10); (**Ex. 8**, at 9:4-16)  (**Ex. 4**, at 17:21-25); (**Ex. 8**, at 9:4-16) **At approximately 11:00 am that same day**, Capt. Svec informed DC Wilson of the investigation and Wilson authorized the re-assignment.. (**Ex. 6**, at 11:05-12:10) **Severy subsequently informed Plaintiff that he would be temporarily re-assigned. (Ex. 4**, at 18:7-20)

**Plaintiff's Temporary Reassignment is Short-lived.**

**That same day**, DC. Wilson was contacted by Cmdr. Pritchett, and informed that Plaintiff was told of the re-assignment and complained that he was not given a reason by Cmdr. Pritchett. (**Ex. 6**, at 12:12-13:5) (**Ex. 6**, at 13:06-14:21).

DC Wilson and Cmdr. Stewart discussed the matter and agreed that there was insufficient evidence to warrant Plaintiff's reassignment and the decision was made to rescind it. (**Ex. 6**, at 13:06-14:21; 24:1-3). This decision was communicated to Plaintiff.  (**Ex. 6**, at 13:06-14:21; 36:5-9).  (**Ex. 4**, at 54:5-16); (**Ex. 2**, at 162:19-22).

Plaintiff remained assigned to the 10th Pct. PDU until he separated from the City on July 28, 2021, pursuant to the terms of the Deferred Retirement Option Plan (herein "DROP") as explained below. (**Ex. 2**, at 162:23-163:3)(**Exhibit 21**, pg. 2; RFA Answer #5; pg. 3)

**Plaintiff contacts DC Wilson regarding the violation of citizens rights.**

**That evening,** after rescinding Plaintiff's reassignment, DC Wilson received a text message from Plaintiff. (Text messages) (**Ex. 6**, at 14:22-16:4; 19:2-13; 19:23-21:15; 24:1-16; 36:5-18).  36:5-18) Plaintiff subsequently discussed his concerns on CCW-MV arrests (**Ex. 6**, at 14:22-16:4; 19:2-13; 19:23-21:15; 24:1-16; 36:5-18)

**Plaintiff's Participation in the Deferred Retirement Option Plan (DROP).**

The Police and Fire Retirement System of the City of Detroit ("PFRS"), a separate legal entity from the City, administers the DROP program. (**Ex. 2**, at 174:23-175:10). The DROP program allows members of PFRS-approved unions, who are eligible to retire with a pension, the option to "freeze" the amount of their pension benefit and continue working. (**Exhibit 19** at 001266COD, 001272COD (see bates stamp in lower right corner of document), DROP Guidelines)

A member's election to participate in DROP is irrevocable and the member's employment with the City must cease when the member's DROP participation ends. (**Ex. 19,** at 001273COD; subsection C; 001280COD) Further, all changes to DROP must be collectively bargained, and is subject to approval of the Bankruptcy Court per the Plan of Adjustment (POA). (**Ex. 19**, at 001267COD: ¶4; 001280COD)

On June 17, 2011, Ball completed a DROP Election form, with a "DROP election date" of **July 28, 2011-his last day of employment with the City of Detroit**.  (**Exhibit 20**, Plaintiff's Drop Election Form);(**Ex. 2**, at 164:12-172:14) **(Exhibit 21**, pg. 2; RFA Answer #3, #4) (**Ex. 2**, at 164:12-172:14). Ball acknowledged that his DROP participation and employment with the City was required to end by July 28, 2021. (**Ex. 2,** at 164:12-172:14)

## <u>STANDARD OF REVIEW</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c).* All justifiable inferences are drawn in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the moving party satisfies its

burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' *Matsushita Elec. Indus. Co.* Supra.

In considering whether summary judgment is appropriate, this court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Hager v. Pike Cty. Bd. of Educ.*, 286 F.3d 366, 370–71 (6th Cir. 2002).

## <u>ARGUMENT</u>

### I.  FIRST AMENDMENT RETALIATION

Plaintiff has alleged a claim of First Amendment retaliation pursuant to *42 U.S.C. § 1983.* To establish a First Amendment retaliation claim, Plaintiff must show that (1) his speech was constitutionally protected; (2) there was an adverse action taken against him that would deter a person of ordinary firmness from continuing to engage in that speech; and (3) a causal connection exists between the first two elements. *Boulton v. Swanson*, 795 F.3d 526, 530 (6th Cir. 2015).

If Plaintiff establishes a prima facie case, the burden shifts to Defendants to demonstrate by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct. Once this shift has occurred, summary judgment is warranted if, in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant." *Leary v. Daeschner*, 349 F.3d 888, 898 (6th Cir.2003).

7

## A. Prima Facie Case

### 1. Constitutionally Protected Speech

Plaintiff was a public employee at the time he engaged in the speech at issue. Whether a public employee's speech is constitutionally protected hinges on whether he was speaking as private citizen or pursuant to his official duties. *See Garcetti v. Ceballos*, 547 U.S. 410, 421, (2006); *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568, L.Ed.2d 811 (1968). The critical question is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014).

In order for a public employee to meet the threshold requirement that his speech was protected, he must demonstrate that (1) he spoke as a private citizen rather than as an employee pursuant to his official duties; (2) he spoke on a matter of public concern; and (3) his speech interest outweighs the government's interest, as an employer, in promoting efficient public service through its employees. *Mayhew v. Town of Smyrna*, 856 F.3d 456, 462 (6th Cir. 2017). Whether a public employee engaged in constitutionally protected speech is a question of law. Mayhew Supra at 462–64.

Relevant factors include the speech's impetus, its setting, its audience, and its general subject matter. *Haddad v. Gregg*, 910 F.3d 237, 246-247 (6th Cir. 2018). Additionally, "ad hoc or de facto duties can fall within the scope of an employee's official responsibilities despite

8

not appearing in any written job description. *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 544 (6th Cir. 2007)

Plaintiff's claim of protected speech rests solely on his assertion that he spoke to Wayne County Assistant Prosecutors (APAs) as a private citizen when he discussed the at-issue arrests. Defendants assert that Plaintiff's communication with the APAs occurred within the scope of his job duties.

Plaintiff testified that he routinely contacted the Prosecutor's office regarding arrests in which he believed probable cause was not clear or "circumstances were sketchy." (**Ex. 2**, at 80:1-87:20). According to Plaintiff, this was done to ensure that he and the prosecutors were on the same page; as it was his responsibility to ensure that each case met the standards for a warrant to be approved. (**Ex 2** at 84:4-15; 16-86:14). Further, Plaintiff indicated that some of his subordinates also contacted the Prosecutor's office in the same vein as he did because "after all, you're trying to build the best case possible."  (**Ex. 2,** Balls Dep., at 86:23-87:20).  Plaintiff's testimony established that contacting the APAs to discuss issues related to active cases was standard operating procedure.

In light of the Plaintiff's testimony above, we find *Omokehinde v. Detroit Bd. of Educ.*, 563 F. Supp. 2d 717 (E.D. Mich. 2008) to be highly instructive. Like the plaintiff in Omokehinde, Plaintiff's discussions about the at-issue arrests with Lt. McCord and Capt. Severy flowed from his duties, and any subsequent discussion with the APA's about the exact

same at-issue arrests did no alter the fundamental nature of the underlying communication such that it becomes the speech of a private citizen.  Given Plaintiff's daily interactions with the APAs, he was performing his job duties and not acting as a private citizen.

Alternatively, Plaintiff's testimony about his phone conversations with APAs Miles and Mireles-Smith regarding CCW-MV arrests amounts to nothing more than a recitation of the allegation in his complaint. There is no other evidence in the record of the alleged conversations having actually occurred. Capt. Severy testified that he has interacted with Miles and Mireles-Smith, and neither contacted him regarding Plaintiff's allegations. (**Ex. 4,** at 95:2-21).  Plaintiff fails to "go beyond the pleadings" and provide "significant probative evidence" that he "spoke out." See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

### 2. *Causation*

Plaintiff must establish a causal connection between his protected speech and the Defendants' actions. To establish causation, Plaintiff must demonstrate that his protected speech was "a substantial or motivating factor" of the adverse action. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010) The true object of this inquiry is to determine whether the plaintiff has been retaliated against as a direct result of his or her protected speech." *Id.*  Defendants rely on their analysis of causation as provided under the Michigan Whistleblower Protect Action to the extent applicable with Federal law.  Defendants

further state that causation fails as to the named Defendants because the record does not support that they were told of Plaintiff conversation with Wayne County APA's regarding the at-issue arrests. (**Ex. 2**, at 86:15-22) (**Ex. 4**, at 95:2-21) **(Ex. 5**, at 67:1-11)

### B.  Legitimate Business Reason

As it relates to Defendant's Legitimate Business Reason, Defendants will rely on their analysis provided under the Michigan Whistleblower Protection act, as it is substantially similar to the analysis required under Federal Law. See *Debano-Griffin v. Lake Cnty.*, 493 Mich. 167, 175–76, 828 N.W.2d 634, 638. (2013). (Specifically, requiring application of the burden-shifting framework set forth in McDonnell Douglas). Additionally, Defendants' reassert that they had no knowledge of Plaintiff's protected activity, so it would have had no impact on their respective actions.

### II.  MONELL CLAIM

Plaintiff brings a Monell claim against the City of Detroit, alleging that the City has a policy or custom of retaliating against public employees who exercise their First Amendment rights to speak as private citizens; and a failure to train or supervise its employee regarding such retaliation.  PageID.9, ¶¶44-45)

Section 1983 does not permit a plaintiff to hold a municipality automatically liable for the injuries their agents cause; a plaintiff can hold a municipality liable "only for 'their own illegal acts.'" *Gambrel v. Knox Cnty., Kentucky*, 25 F.4th 391, 408 (6th Cir. 2022). To prevail,

Plaintiff must establish that his constitutional rights were violated, and the City's policy or custom was the "moving force" behind the violation. See *Monell*, Supra at 694.

Plaintiff's "failure to train" claim notwithstanding, his complaint does not specifically articulate which of the traditional methods of establishing a Monell claim he relies upon. (**Ex. 1**, at ECF No. 1, PageID.9, ¶¶44-45).  See *Winkler v. Madison Cnty.*, 893 F.3d 877, 901 (6th Cir. 2018). The City will assume, arguendo, that Plaintiff asserts Monell liability based on actions taken by officials with final decision-making authority; and that the City had a custom of tolerance or acquiescence of federal violations.

### A.  Actions of Policymaking Officials

A municipality is liable for an official's unconstitutional action only when the official is the one who has the "final authority to establish municipal policy with respect to the action ordered." *Feliciano v. City of Cleveland*, 988 F.2d 649, 652 (6th Cir. 1993). Mere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials. *Id*.

To determine whether final authority to make municipal policy is vested in a particular official, we must resort to state law. This includes "state and local positive law," such as statutes, ordinances, and regulations, and less formal sources of law such as local practice and custom.  *Id*.

In the instant matter, the named Defendants cannot be classified as "policy makers" because they do not have final authority to establish policy on behalf of the City of Detroit. DC Wilson testified that the named Defendants did not have such authority. (**Ex. 6**, at 39:22-40:12)**.** To be clear, Department regulations clearly articulate that policymaking authority rests with the Board of Police Commissioners, in consultation with the Chief of Police, and the approval of the Mayor.  (**Ex. 14**, at 000398-COD, see101.2-4.1 "Duties of the Board of Police Commissioners")**.**  There is no evidence in the record that shows the named Defendants had final "decision-making authority" such that their constitutional violations can make the City liable under *Monell*. Thus, Plaintiffs Monell claim based on the actions of officials with decision-making authority must fail.

### B. Custom of Tolerance or Acquiescence

A "custom" for purposes of Monell liability must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 507 (6th Cir. 1996). The City assumes, arguendo, that Plaintiff seeks to prevail on an "inaction theory" and will apply the "Doe" factors *Id*. at 508.  Additionally, the Sixth Circuit has found that a complaint which fails to allege prior incidents of misconduct cannot state a claim under an inaction theory. See *Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016). (Dismissing Bickerstaff's Monell Claim under Rule 12(b)(6)).

13

In the instant matter, DC Wilson testified that he was not aware of any other officers alleging retaliation in a manner similar to Plaintiff. (**Ex. 6**, at 42:20-43:13). Additionally, Plaintiff's complaint contains not a single allegation regarding prior incidents of First Amendment retaliation. The established record does not show any prior incidents of First Amendment retaliation.

With no "significant probative evidence" of prior incidents, Plaintiff is left with only "contemporaneous or subsequent conduct." However, "contemporaneous or subsequent conduct." cannot be relied upon to prove an inaction theory. See *Metris-Shamoon v. City of Detroit*, 545 F. Supp. 3d 506, 521 (E.D. Mich. 2021) quoting *Connick v. Thompson*, 563 U.S. 51, 63 n.7 (2011). Such conduct cannot establish a pattern of violations that would provide notice to the City. see *Connick* at 63 n.7. Thus, Plaintiff's claim of Monell liability on the basis of an inaction theory must fail.

### C.  Failure to Train or Supervise

A "failure to train or supervise" claim requires the Plaintiff  to prove: (1) that the municipality acted with "deliberate indifference" to the fact that its inadequate training or supervision would lead its agents to violate constitutional rights; and (2) a municipality's improper training or supervision must have "actually caused" the plaintiff's injury. *Gambrel v. Knox Cnty., Kentucky*, 25 F.4th 391, 408 (6th Cir. 2022)  To establish deliberate indifference, a plaintiff must prove that the constitutional violation was a "known or obvious consequence"

14

of the lack of training or supervision. *Id*. A plaintiff can accomplish the above by establishing that a municipality's employees engaged in a "pattern of similar constitutional violations" separate from the conduct that harmed the plaintiff. *Id*. In the alternative, a plaintiff can show a single violation of federal rights, accompanied by a showing that a municipality failed to train its employees to handle recurring situations presenting an obvious potential for such a violation. *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008).

Similar to his "custom of tolerance" claim, Plaintiff's Complaint is devoid of allegations suggesting that the City was aware of the unconstitutional acts Plaintiff alleges occurred. (**Ex. 1** at ECF No. 1, PageID.9, ¶45). This claim necessitates well-pleaded facts regarding prior instances of abuse. See *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) Plaintiff's general allegation that there was a "failure to train" is not sufficient; as deliberate indifference cannot be established simply by demonstrating that there was inadequate training. See *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Plaintiff failed to allege that the City knew of prior unconstitutional conduct on the part of its officers; thus, his failure-to-train or supervise claim must fail.

The record is devoid of evidence which would establish a "pattern" of First Amendment retaliation by the City against its employees. Additionally, DC Wilson testified that officers receive anti-retaliation training; and legal update training. (**Ex. 6**, at 45:25-46:07) Further, DC Wilson testified that he was not aware of any other officers alleging retaliation in a manner similar to Sgt. Ball. (**Ex. 6,** at 42:20-43:13).

15

Further, proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. See *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).  As articulated above, the named Defendants are not "policymakers" for purposes of Monell liability. Thus, Plaintiff's claim of Monell liability on the basis of a failure to train or supervise must fail.

### D.  Causation

Plaintiff cannot show that the City's policy or custom was the "moving force" behind the constitutional violation Plaintiff alleges occurred. See *Monell*, Supra at 694. In essence, this is a traditional causation inquiry, requiring the plaintiff to show that it was the defendant's custom or policy that led to the complained of injury. *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 609 (6th Cir. 2007).

There is absolutely no evidentiary support in the record as to causation on the part of the City. The record is devoid of evidence which shows Defendants were "policymakers." Further, the record is devoid of evidence that the City had prior notice of a pattern of First Amendment retaliation; or that it should have obvious to the City's "policymakers."  The City cannot be said to be the "moving force" behind Plaintiff's claim of retaliation.

### III. MICHIGAN WHISTLEBLOWER PROTECTION ACT

Plaintiff also asserts a claim under Michigan's Whistleblower Protection Act ("Herein WPA"), MCL §15.361, et seq. Defendants assert that Plaintiff cannot establish a prima facie case of a WPA violation under MCL §15.362. Additionally, Plaintiff cannot prove that Defendants' legitimate business reasons for their conduct is pretext.

### A. Plaintiff's Prima Facie Case

To establish a prima facie case under MCL §15.362, a plaintiff must show that "(1) the employee was engaged in one of the protected activities listed in the act; (2) the plaintiff was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action." *Pace v. Edel-Harrelson, 499* Mich. 1, 6, 878 N.W.2d 784, 787 (2016).

Assuming for the purposes of this Motion for Summary Judgement that Plaintiff engaged in protected activity, the analysis begins at whether he suffered an adverse employment action as defined by the act.

### 1. Adverse Employment Action

Plaintiff cannot establish that that he suffered an adverse employment action. The scope of prohibited retaliation under the WPA is set forth in *MCL §15.362*, which provides that an employer "shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment" for engaging in protected activity.

17

For an employer's action to amount to an adverse employment action under the WPA, the action must be *<u>materially adverse</u>*, meaning that it must be more than a mere inconvenience or an alteration of job responsibilities. *Wurtz v. Beecher Metro. Dist.* (2012) 825 N.W.2d 651, 298 Mich.App. 75; appeal granted 831 N.W.2d 235, 494 Mich. 862; reversed 848 N.W.2d 121, 495 Mich. 242; rehearing denied 846 N.W.2d 581, 495 Mich. 1010.

As to Lt. Adams, Plaintiff asserts an adverse action based on the argument between the two; in which Plaintiff alleges Lt. Adams ridiculed his use of the Department's CRTP form. (**Exhibit 25**, CRTP Form) **(Ex 2**., at 152:20-153:20; 115:10-23) (**Exhibit 5**, at 42:17-4254:15, Jason Adams Deposition) (**Ex 10**, at 7:22-8:17) Lt. Adams comments are inconsequential, as they did not run afoul of the prohibitions listed in MCL §15.362. (**Ex. 2**., at 152:20-153:20; 115:10-23).

As to Capt. Severy and Lt. McCord, Plaintiff alleges an adverse action in connection with the meeting in which he was informed that he would be reassigned pending an investigation for "gossiping." (**Ex. 4**, at 50:7-22; 52:12-54:4) (**Ex. 3,** at 105:9-107:19) (**Ex. 2**., PL's Dep., at 134:23-137:5). Plaintiff testified that, ultimately, he was not reassigned or transferred; and remained at the 10th Precinct PDU until he separated from the City under the terms of the DROP plan.  (**Ex.  2**, at 162:23-163:3); (**Ex. 21,** at pg., see Answers to RFA #7, #8-#9). Plaintiff being informed that he would be reassigned is not an adverse employment action. Being informed of a possible temporary assignment out is nothing more than an

inconvenience or alteration of job duties. Plaintiff did not have had a change in job title, wages, or other recognized materially adverse action.

Further, an argument that Plaintiff remained reassigned until he was notified of its rescission does not qualify as an adverse action **based on the evidentiary record before the Court**. Specifically, there was a period of several hours before Plaintiff was told that the reassignment was rescinded. As he suffered no change in pay or benefits. At most, the prior is a mere inconvenience.

A review of *Toward v. City of Warren* and *Smith v. City of Flint* illustrates how the evidentiary record is determinative of whether a Police Officer's reassignment is considered an adverse action. See *Toward v. City of Warren*, No. 319858, 2015 WL 3874676, at *4 (Mich. Ct. App. June 23, 2015); *appeal denied*, 499 Mich. 881, 876 N.W.2d 523 (2016). See also *Smith v. City of Flint*, 313 Mich. App. 141, 155, 883 N.W.2d 543, 551 (2015), appeal granted, opinion rev'd, 500 Mich. 938, 889 N.W.2d 507 (2017). In *Toward*, the court found no adverse action where a patrol officer was reassigned to front desk duties and suffered no change in pay or benefits. *Toward* at *4. Contrast the prior with *Smith*, where the court found a question of fact as to the reassignment of a police officer who worked the day shift, as the Police Union's President, but was reassigned to the night shift in the most dangerous part of the City. *Smith* at 155, 883 N.W.2d at 551. Defendant's assert that the instant matter is on par with *Toward*. For the reasons stated above, Plaintiff has not demonstrated a genuine issue of material fact concerning whether he suffered an adverse employment action.

### 2. Causation

Assuming Plaintiff can establish they suffered an adverse employment action, the next part of the analysis is causal connection. "A plaintiff may establish a causal connection through either direct evidence or indirect and circumstantial evidence." *Shaw v. Ecorse*, 283 Mich. App. 1, 14-15, 770 N.W.2d 31, 40 (2009). Absent direct evidence of retaliation, a plaintiff must rely on indirect evidence of his or her employer's unlawful motivations to show that a causal link exists between the whistleblowing act and the employer's adverse employment action. *Debano-Griffin v. Lake Cnty.*, 493 Mich. 167, 176, 828 N.W.2d 634, 638 (2013). To establish causation using circumstantial evidence, "the circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Shaw* at 15, 770 N.W.2d 31, 40 (2009).

Further, a temporal relationship, standing alone, does not demonstrate a causal connection between the protected activity and any adverse employment action. *West v. Gen. Motors Corp.*, 469 Mich. 177, 186, 665 N.W.2d 468, 472 (2003). Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation. *Id*

Plaintiff has not provided any direct evidence of causal connection. Thus, to establish a causal connection, Plaintiff must provide circumstantial evidence. Specifically, Plaintiff must establish that nexus between the alleged protected activity and a subsequent adverse employment action exists.

20

Plaintiff is unable to establish a causal connection in the instant case. At most, Plaintiff offers the Court speculation as to the reason for the alleged adverse employment action. However, the record shows that the alleged adverse employment actions were related to Plaintiff's history of using the CRTP form; and an investigation of Plaintiff based on the reasonable suspicion of his violation of Department policy.

As to Lt. Adams, the substantive interactions between him and Plaintiff regarding Plaintiff's use of the CRTP form occurred **prior** to Plaintiff's alleged **late May 2021** run-in with Lt. Adam regarding the unlawful order. (Ex. 1, at ECF No. 1, PageID.4 -,PageID5; ¶ ¶ 20-21). Specifically, Lt. Adams testified regarding incidents on **November 5, 2020,** and **April 2, 2022,** in which he took issue with Plaintiff's use of the CRTP form. **(Ex. 5,** Dep., at 20:3-34:5; 36:4-14) When each of those incidents occurred, Lt. Adams immediately took his concerns to Plaintiff's direct supervisors at the time, as well as Cmdr. Stewart. (**Ex. 5,** at 20:3-34:5) Lt. Adams also raised his concerns directly with Plaintiff during meetings related to the Precincts "Cease Fire" Program. (Ex. 5, at 20:3-34:5).

Lt. McCord corroborates Lt. Adams account of the April 2022 incident. (**Ex. 3,** at 150:22-152:3).  In response to that incident, Lt. McCord spoke to Plaintiff in the presence of Lt. Adams, Cmdr. Stewart and others, and reiterated that they should "work the cases" before resorting to using a CRTP form. (**Ex. 3,**at 150:22-152:3). Additionally, Lt. McCord recounted Cmdr. Stewarts consternation with Plaintiff's use of the CRTP form in the April 2022 incident. (**Ex. 3,** at 153:15 -155:12).  Further, Capt. Severy addressed the very same issue with Plaintiff

and Cmdr. Stewart. (**Ex 4**., at Severy Dep., 87:23-89:19).  Given the above testimony, there is a reasonable inference that Plaintiff was aware of Lt. Adams stance on Plaintiff's use of the CRTP form well before their alleged May 24th run-in. Plaintiff has put forth no evidence that would contradict that inference. Thus, Plaintiff cannot show that the alleged adverse employment action was causally connected to any alleged protected activity.

As to Lt. McCord and Capt. Severy, Plaintiff cannot show that the investigation initiated against him was **because of** his protected activity. Plaintiff testified that he was not given any of the substantive details regarding the "gossiping" allegation and he **believes** that it was all "fabricated." (**Ex. 2**, Balls Dep., at 136:3-137:8). It makes sense then, that all he could do was speculate about the particulars of the allegation.  However, none of the prior negates the fact that Ofc. Moore called Lt. McCord regarding Det. Kuhar's comments; and set the investigation in motion. Simply put, the investigation of Plaintiff was initiated **because of** Ofc. Moore's phone call to Lt. McCord. Plaintiff has not presented any evidence that comes even remotely close to establishing a reasonable inference of causation. Further, "the fact that a plaintiff engages in a 'protected activity' under the Whistleblowers' Protection Act does not immunize him from an otherwise legitimate, or unrelated, adverse job action." *West v. Gen. Motors Corp.*, 469 Mich. 177, 187, 665 N.W.2d 468, 473 (2003)

### B. Legitimate Business Reason

Assuming, arguendo, that Plaintiff establishes a prima facie case, the burden of proof shifts to Defendants to offer a facially legitimate reason for their actions. *Debano-Griffin v.*

*Lake Cnty*., 493 Mich. 167, 179, 828 N.W.2d 634, 640 (2013). If Defendants meet their burden, Plaintiff then has the opportunity to prove that the legitimate reason offered by Defendants is merely pretext. *Id*. Defendants are entitled to summary judgment if Plaintiff fails to prove pretext. *Id*.

Ofc. Moore's phone call to Lt. McCord regarding Det. Kuhar's Comment was a legitimate reason to request that Capt. Severy initiate an investigation, and temporary reassignment, of Plaintiff for the departmental charge of "gossiping." Lt. McCord's suspicion regarding Plaintiff's involvement was based on the tone and tenor of her conversation with Ofc. Moore; and Lt. McCord's previous interactions with Plaintiff regarding his relationship with Ofc. Moore. Capt. Severy secured approval for the investigation, and temporary reassignment, through Plaintiff's chain of command. Ofc. Moore's admission that Plaintiff told her about Det. Kuhar's comments regarding her is the death knell for any notion of pretext.

Likewise, there was legitimate reason for Lt. Adams comments regarding Plaintiff' use of the Department's CRTP form. Lt. Adams disagreed with the manner in which Plaintiff used the CRTP form and believed it encouraged complainants not to cooperate. Lt. Adams addressed his concerns to Plaintiff and Plaintiff's supervisors. Additionally, Plaintiff's chain of command also raised concern about the manner of Plaintiff's use of the CRTP form prior to the allegations alleged in Plaintiff's complaint. On that basis, Plaintiff will not be able to establish pretext.

23

## IV. QUALIFIED IMMUNITY

Defendants' Severy, McCord, and Adams assert that they are entitled to qualified immunity from Plaintiffs First Amendment Retaliation Claim because there was no constitutional violation.  In addressing qualified immunity, a court first must decide whether the facts a plaintiff has alleged or shown make out a violation of a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 231–232, (2009). A court then must consider whether the right at issue was clearly established at the time of defendant's alleged misconduct. Id. It may assess these two factors in the most efficient order and manner. Id.

Defendants assert that they are entitled to Qualified Immunity as Plaintiff cannot establish the violation of a constitutional right.  Defendants acknowledge that their entitlement to the Immunity is attached to the Court's determination of whether Plaintiff was speaking as a public employee or a private citizen for First Amendment purposes.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request this Honorable Court enter an Order dismissing Plaintiffs' lawsuit in its entirety, and award cost this Court deems reasonable.                                        Respectfully submitted,

CITY OF DETROIT LAW DEPARTMENT

*/s/Andrae D. Smith*
Andrae D. Smith (P69153)

*/s/Letitia C. Jones*
Dated: July 19, 2022                       Letitia C. Jones (P52136)

24

## <u>CERTIFICATION PURSUANT TO L.R. 7.1</u>

LOCAL RULE CERTIFICATION: I, Andrae Smith, certify that this document complies with Local Rule 5.1 (a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1 (d)(3).

*/s/ Andrae Smith*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 19, 2022, I caused to have electronically filed the attached **Corrected Defendant's Motion for Summary Judgment, Corrected Brief in Support of Motion for Summary Judgment, Exhibits 1 - 26 and Certificate of Service** with the Clerk of the Court using the E-file & Serve system, which will serve a copy of such filing via email to all attorneys of record.

*/s/Myria Ross*